IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KLAMATH TRIBES OF OREGON,
et al.,

                Plaintiffs,

    v.

PACIFICORP, an Oregon
Corporation,

                Defendant.

Civil No. 04-644-CO

FINDINGS AND RECOMMENDATION

COONEY, Magistrate Judge:

    Plaintiffs bring this action for damages for the destruction and interference with federal treaty rights to fish for anadromous and non-anadromous fish in the headwaters of the Klamath River. The court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1362. Plaintiffs seek compensatory and punitive damages, interest on the damages, costs and attorney's fees. Defendant moves for summary judgment (#36).

## I. FACTS

Defendant submits the following statement of facts:

The Klamath Tribes of Oregon, Miller Anderson, Joseph Hobbs, Catherine Weiser-Gonzales, Robert Anderson, Joseph Kirk, Orin Kirk, Leonard Norris, Jr., Philip Tupper, Robert Bojorcas, and Klamath Claims Committee (collectively referred to as the Klamath or the Tribe) first brought this action on or about May 11, 2004. (Complaint). In 1954, Congress passed the Klamath Termination Act, 25 U.S.C. § 564 et seq.. The United States terminated federal recognition of the Klamath by 1961. (Bledsoe Decl. Exhibit 1 - First Amended Complaint). The United States restored federal recognition to the Tribe in 1986. (Id.). The Klamath allege that harm to its treaty fishing rights was caused by the construction of Copco 1 Dam during the period 1911-1916, of Link River Dam and associated work on the nearby reef in the early 1920s, and Keno Dam in 1967.

Plaintiffs submit the following additional facts:

At the time of the Klamath Indian treaty with the United States and for many decades thereafter, anadromous fish could be found and were taken by the Klamath Indians in the Williamson and Sprague Rivers, and possibly in the Wood River System, at the upper end of the Klamath Basin. (Dunsmoor Affidavit). Anadromous fish could be restored over time to the Williamson, Sprague and Wood River sub-basins if the Pacificorp project dams were removed or if

adequate upstream and downstream fish passage was provided. (Id.).

## II. **LEGAL STANDARDS**

Pursuant to Rule 56 subsection c of the Federal Rules of Civil Procedure, a moving party is entitled to summary judgment as a matter of law "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed.R.Civ.P. 56 subsection c; Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir.), cert. denied, 502 U.S. 994 (1991). In deciding a motion for summary judgment, the court must determine, based on the evidence of record, whether there is any material dispute of fact that requires a trial. Waldridge v. American Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994)(citations omitted). The parties bear the burden of identifying the evidence that will facilitate the court's assessment. Id.

The moving party bears the initial burden of proof. See Rebel Oil Co., Inc. v. Atlantic Richfield Co., 51 F.3d 1421, 1435 (9th Cir.), cert. denied, 516 U.S. 987 (1995). The moving party meets this burden by identifying portions of the record on file which demonstrates the absence of any genuine issue of material fact. Id. "[T]he moving party . . . need not produce evidence, but simply can argue that there is an absence of evidence by which the nonmovant can prove his case." Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390, 393 (4th Cir. 1994),

cert. denied, 513 U.S. 1191 (1995)(citation omitted).

In assessing whether a party has met their burden, the court must view the evidence in the light most favorable to the nonmoving party. Allen v. City of Los Angeles, 66 F.3d 1052 (9th Cir. 1995). All reasonable inferences are drawn in favor of the nonmovant. Id.

If the moving party meets their burden, the burden shifts to the opposing party to present specific facts which show there is a genuine issue for trial. Fed.R.Civ.P. 56(e); Auvil v. CBS "60 Minutes", 67 F.3d 816 (9th Cir. 1995), cert. denied, 517 U.S. 1167 (1996). The nonmoving party cannot carry their burden by relying solely on the facts alleged in their pleadings. Leonard v. Clark, 12 F.3d 885, 888 (9th Cir. 1994). Instead, their response, by affidavits or as otherwise provided in Rule 56, must designate specific facts showing there is a genuine issue for trial. Id.

### III. DISCUSSION

Defendant moves for summary judgment arguing that, under South Carolina v. Catawba Indian Tribe, Inc., 476 U.S. 498 (1986), the Klamath Termination Act made the state's statutes of limitations applicable to the Tribe's claims in 1961, and that the potentially applicable state statutes of limitations have run, barring the Tribe's claims. In response, plaintiffs argue that the rule in Catawba Indian Tribe does not apply to the treaty fishing rights at issue in this litigation, and, in the alternative, if the statutes of limitations apply, the Tribe has a cause of action for a

continuing trespass under Oregon law.  In reply, defendant argues that Catawba Indian Tribe applies to this case, and Oregon Courts have rejected the Tribe's continuing tort theory.

In South Carolina v. Catawba Indian Tribe, Inc., 476 U.S. 498, 500 (1986), the Supreme Court, in interpreting the statute authorizing the division of Catawba Tribal assets, 25 U.S.C. §§ 931-938, held that the State's statute of limitations applied to a claim brought by the Catawba Tribe for possession of a 225 square mile tract of land held by the tribe prior to the passage of the Non-Intercourse Act.  Section 5 of the Catawba Act provided that:

> The constitution of the tribe adopted pursuant to sections 461, 462, 463, 464, 465, 466, to 470, 471 to 473, 474, 475, 476 to 478, and 479 of this title shall be revoked by the Secretary.  Thereafter, the tribe and its members shall not be entitled to any special services performed by the United States for Indians because of their status as Indians, all statutes of the United States that affect Indians because of their status as Indians shall be inapplicable to them, and the laws of several States shall apply to them in the same manner they apply to other persons or citizens within their jurisdiction

Id. at 505 (citing 25 U.S.C. § 935).

In interpreting this provision and finding that the state's statute of limitations applied to the claim, the Supreme Court stated, in relevant part that:

> This provision establishes two principles in unmistakably clear language.  First, the special federal services and statutory protections for Indians are no longer applicable to the Catawba Tribe and its members.  Second, state laws apply to the Catawba Tribes and its members in precisely the same fashion that they apply to others.

FINDINGS AND RECOMMENDATION - 5

* * * *

The canon of construction regarding the resolution of ambiguities in favor of the Indians, however, does not permit reliance on ambiguities that do not exist; nor does it permit disregard of the clearly expressed intent of Congress. . . .

* * * *

Without special federal protection for the Tribe, the state statute of limitations should apply to its claim in this case. For it is well established the federal claims are subject to state statutes of limitations unless there is a federal statute of limitations or a conflict with federal policy. Although federal policy may preclude the ordinary applicability of a state statute of limitations for this type of action in the absence of a specific congressional enactment to the contrary, *County of Oneida v. Oneida Indian Nation*, 470 U.S. 226, 105 S.Ct. 1242, 84 L.Ed.2d 169 (1985), the Catawba Act clearly suffices to reestablish the usual principle regarding the applicability of the state statute of limitations. In striking contrast to the situation in *County of Oneida*, the Catawba Act represents an explicit redefinition of the relationship between the Federal Government and the Catawbas; an intentional termination of the special federal protection for the Tribe and its members; and a plain statement that state law applies to the Catawbas as to all 'other persons or citizens.'

That the state statute of limitations applies as a consequence of terminating special federal protections is also supported by the significance we have accorded congressional action redefining the federal relationship with particular Indians. We have long recognized that, when Congress removes restraints on alienation by Indians, state laws are fully applicable to subsequent claims. Similarly, we have emphasized that Termination Acts subject members of the terminated tribe to 'the full sweep of state laws and state taxation.' These principles reflect an understanding that congressional action to remove restraints on alienation and other federal protections represents a fundamental change in federal policy with respect to the Indians who are the subject of the particular legislation.

> * * * *
>
> > . . . We do not accept petitioners' argument that the Catawba Act immediately extinguished any claim that the Tribe had before the statute became effective. Rather, we assume that the status of the claim remained exactly the same immediately before and immediately after the effective date of the Act, but that the Tribe thereafter had an obligation to proceed to assert its claim in a timely manner as would any other person or citizen within the State's jurisdiction. . . .
>
> * * * *
>
> > We thus conclude that the explicit redefinition of the federal relationship reflected in the clear language of the Catawba Act requires the application of the state statute of limitations to the Tribe's claim.

Id. at 505-511 (footnotes omitted).

In 1954, Congress passed the Klamath Termination Act, 25 U.S.C. §564 et seq. (The Klamath Act). The provision of the Klamath Act terminating the federal trust relationship with the Tribe provides that:

> Upon removal of Federal restrictions on the property of the tribe and individual members thereof, the Secretary shall publish in the Federal register a proclamation declaring that the Federal trust relationship to the affairs of the tribe and its members has terminated. Thereafter individual members of the tribe shall not be entitled to any of the services performed by the United States for Indians because of their status as Indians and, except as otherwise provided in this subchapter, all statutes of the United States which affect Indians because of their status as Indians shall no longer be applicable to the members of the tribe, and the laws of the several States shall apply to the tribe and its members in the same manner as they apply to other citizens or persons within their jurisdiction.

25 U.S.C. §564q.

The Klamath Act also contains the following provisions regarding water and fishing rights:

> (a) Water rights; laws applicable to abandonment
>
> Nothing in this subchapter shall abrogate any water rights of the tribe and its members, and the laws of the State of Oregon with respect to the abandonment of water rights shall not apply to the tribe and its members until fifteen years after the date of the proclamation issued pursuant to section 564q of this title.
>
> (b) Fishing rights or privileges
>
> Nothing in this subchapter shall abrogate any fishing rights or privileges of the tribe or the members thereof enjoyed under Federal treaty.

25 U.S.C. §564m.

This court finds that the reasoning set forth by the Supreme Court in Catawba Tribes is applicable to this case and that Oregon's statutes of limitations apply to the Klamath tribe's claims. The Klamath Act contains the same language as the Catawba Act. The Klamath Act had the same effect; the Tribe's special relationship with the Federal Government ended and any claims by the Tribe or its members became subject to state statute of limitations. See Catawba Tribes, 476 U.S. at 507-508. The Klamath Act represents clear congressional intent to redefine the relationship between the Tribe, remove the special protections previously afforded the Tribe, and this requires the application of the state statute of limitations to the Tribe's claims. See Id. at 510-511.

Plaintiffs argue that this court should apply the principles set forth in Menominee Tribe of Indians v. U.S., 391 U.S. 404 (1968), U.S. v. Adair, 723 F.2d 1394 (9th Cir.), cert. denied, 467 U.S. 1252 (1984), Kimball v. Callahan, 590 F.2d 768 (9th Cir.), cert. denied, 444 U.S. 826 (1979)(Kimball II), and Kimball v. Callahan, 493 F.2d 564 (9th Cir.), cert. denied, 419 U.S. 1019 (1974)(Kimball I) and find that the state statue of limitations is not applicable to their claims to enforce their treaty fishing rights. The court finds that these cases did not address the issue of whether the state statute of limitations applies to claim for damages brought by the Tribe or its members, and, therefore, these cases are inapplicable.

As the defendant points out, there are three Oregon statutes of limitations that may be applicable to the tribe's claims; ORS 12.080 which provides a six year limitations period for actions based upon a contract or a statute or for interference with certain interests in real property, ORS 12.110 which provides a two year limitations period for claims based on injury to persons or rights not arising under a contract and not specifically enumerated in ORS Chapter 12, or ORS 12.140 which provides a ten year limitations period for any cause of action not otherwise provided for. Under Oregon law, when a continuing tort is causing on going injury, a cause of action accrues and the statute of limitations begins to run when the trespass or interference begins. Denora v. Fischer Engineering & Maintenance Co., Inc., 55 Or. App. 448, 450 (1982).

FINDINGS AND RECOMMENDATION - 9

The undisputed facts show that the dams at issue, which plaintiffs claim have caused damage to and interfered with their fishing rights, were built in 1916, the 1920's, and 1967. Any cause of action based on damage from these dams accrued when the dams were built. However, because of the Tribe's special relationship with the Federal Government, the state statute of limitations did not apply to any claims by the Tribe or individual tribe members, until the Klamath Termination Act became effective in 1961. Under the longest applicable statue of limitations, ORS 12.140, the statue of limitations ran on plaintiff's claims in 1971. This action was not filed in May 2004. Therefore, it is barred by the statute of limitations.

## IV. **RECOMMENDATION**

Based on the foregoing, it is recommended that defendant's motion for summary judgment (#36) be granted and this case be dismissed.

*This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals*. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. *The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. Thereafter, the parties have ten days within which to file a response to the*

*objections*. Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this    14    day of April, 2005.


_____/s/_____

UNITED STATES MAGISTRATE JUDGE